IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GROCERY OUTLET, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NAFTALI, INC.,<br><br>　　　　Defendant. | Case No. 23-cv-05254-CRB<br><br>**ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS (DKTS. 27, 29)** |

At the height of the COVID-19 pandemic, Plaintiff Grocery Outlet, Inc. ("Grocery Outlet") contracted with Defendant Naftali, Inc. ("Naftali") to purchase sanitizing wipes ("Goods") for Grocery Outlet to sell at its retail supermarket locations. Compl. ¶ 1. Grocery Outlet alleges that Naftali represented that the Goods were in full compliance with federal and state law, but that the Goods were pesticides that Naftali failed to register, in violation of federal and state law. Id. ¶¶ 2–4. Based on that conduct, Grocery Outlet brings seven causes of action against Naftali. See id. ¶¶ 40–101.

Naftali now moves to dismiss Grocery Outlet's Unfair Competition Law claim ("UCL claim") for lack of statutory standing. See MTD at 1 (dkt. 27). Naftali also moves to strike Grocery Outlet's claims for punitive damages and attorney's fees. See MTS (dkt. 29). For the following reasons, the Court (1) GRANTS Naftali's motion to dismiss the UCL claim, (2) GRANTS Naftali's motion to dismiss the punitive damages claim,[1] and (3) DENIES Naftali's motion to strike the attorney's fees claim as MOOT.

---

[1] As explained below, the Court converts Naftali's motion to strike into a motion to dismiss.

I.   BACKGROUND

A.   **Grocery Outlet Contracts with Naftali**

Naftali is "a national manufacturer and marketer of travel and well-being products." Compl. ¶ 2.  Grocery Outlet is a retailer with 455 independently-operated stores located throughout eight states.  Id. ¶ 8; RJN, Ex. B.[2]

Between May and June of 2020, Grocery Outlet contracted with Naftali to purchase sanitizing wipes ("Goods") to sell at its retail supermarket locations.  Compl. ¶ 1.  The Goods included four types of sanitizing wipes.  Id. ¶ 13.  Naftali "represented that the wipes could be used to sterilize, to kill germs on, and/or as an antibacterial on both surfaces and skin and that the wipes were in full compliance with federal and state law." Id. ¶ 2.  Relying on Naftali's representations, Grocery Outlet purchased 718,032 units of the Goods, at a total cost of $1,802,253.12.  Id. ¶¶ 12, 15.

Grocery Outlet highlights three relevant representations that Naftali made in the Purchase Orders:

- "Except for Goods that Buyer has agreed to recondition, Seller expressly warrants that the Goods are not subject to any label-change or tag-removal requirements . . ."

- "Seller is in full and absolute compliance with any and all legal and/or regulatory requirements and guidelines relating to the Goods, including, without limitation, all issues relating to: . . . labeling, packaging, . . . . Seller expressly warrants that all Goods comply with all state, federal, and local laws and regulations applicable to the Goods . . . ."

- Seller will "defend, indemnify and hold harmless [Buyer] and its parent, subsidiary, or other related or affiliated entities from and against any lawsuit, claim or demand of any kind or nature whatsoever, arising as a result of or in connection with the Goods sold under this agreement of the terms of the Purchase Order."

---

[2] Naftali requests that the Court take judicial notice of three exhibits: (1) Grocery Outlet Holding Corp.'s Form 10-Q Quarterly Report for the period ending June 29, 2019, (2) Grocery Outlet Holding Corp.'s Form 10-K Annual Report for the period ending December 31, 2022, and (3) Grocery Outlet Holding Corp.'s Form 10-Q Quarterly Report for the period ending September 30, 2023.  RJN (dkt. 28).  Grocery Outlet does not oppose this request.  Because these documents are public records "not subject to reasonable dispute" and their accuracy is readily verifiable, the Court grants Naftali's request.  See Fed. R. Evid. 201(b); Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018).

Id. ¶¶ 16–17.

### B. Government Agencies Identified the Goods as Unregistered Pesticides

On February 3, 2021, the California Department of Pesticide Regulation (CDPR) found that two of Naftali's Goods were unregistered pesticides in violation of California Food and Agricultural Code section 12811, which "requires all pesticides to be registered in California." Id. ¶ 23 (quoting Ex. D).

On or about March 8, 2021, Grocery Outlet recalled all of its unsold Goods and removed at least 160,015 units from its stores. Id. ¶ 29. The recalled Goods cost Grocery Outlet $425,929.89. Id. ¶ 30.

On March 9, 2021, the U.S. Environmental Protection Agency ("EPA") inspected one of Grocery Outlet's stores, id. ¶ 9, and thereafter identified the Goods as unregistered pesticides, id. ¶¶ 3, 19, and Ex. B. Under federal law, the Goods were considered "pesticides" because the labeling made pesticidal claims, including that they would "sterilize and kill germs on surfaces and/or were antibacterial when used on surfaces." Id. ¶¶ 3, 20. Contrary to Naftali's representations to Grocery Outlet, Naftali had not registered the Goods as "pesticides" in compliance with the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. §§ 136 et seq. (FIFRA). Id. ¶ 19–20.

On May 20, 2021, Grocery Outlet notified Naftali that the EPA had identified the Goods as unregistered pesticides. Id. ¶ 24. "Because the Goods did not conform to the parties' agreement(s) . . . Grocery Outlet revoked its acceptance of the Goods that were unsold and unused." Id. ¶ 24–25. Grocery Outlet also "demanded a full refund of the money it paid to Naftali for the remaining units and the removal of the Goods from its stores by May 31, 2021." Id. ¶ 26. Additionally, Grocery Outlet notified Naftali that it would seek indemnification for any penalties or fines imposed against it because of Naftali's non-conforming Goods. Id. ¶ 27. Naftali "repeatedly refused to accept responsibility for its non-conforming goods." Id. ¶ 28. On September 25, 2022, Grocery Outlet made its last "demand that Naftali indemnify Grocery Outlet for its share of the civil penalty" imposed by the EPA, and Naftali refused. Id. ¶ 39.

3

In February of 2023, "the Region IX office of the EPA sent Grocery Outlet a letter confirming the alleged violations of FIFRA and threatening to pursue a civil administrative complaint against Grocery Outlet." Id. ¶ 21.

### C. EPA's Civil Penalty Against Grocery Outlet

On August 29, 2023, the EPA and Grocery Outlet executed a Consent Agreement and Final Order Pursuant to 40 C.F.R. §§ 22.13(b) and 22.18(b) ("Consent Agreement"), which resolved the investigation into the alleged FIFRA violations. Id. ¶ 32. The Consent Agreement established 63 violations, and 59 of those violations were attributable to the Goods that Naftali sold to Grocery Outlet. Id. ¶ 33. The EPA imposed a civil penalty against Grocery Outlet in the amount of $392,000 "'as the final settlement and complete satisfaction of the civil claims against [Grocery Outlet] arising from' the EPA's allegations against Grocery Outlet that it sold unregistered pesticides, including the Goods." Id. ¶ 32 (quoting Ex. E). According to Grocery Outlet, $367,111.11 of the $392,000 civil administrative penalty is attributable to the Goods that it purchased from Naftali. Id. ¶ 34. Grocery Outlet itself paid the penalty in September of 2023. Id. ¶ 35.

### D. Procedural History

On October 12, 2023, Grocery Outlet brought this action against Naftali, alleging seven causes of action: (1) breach of contract, (2) contractual indemnification, (3) breach of express warranty, (4) breach of implied contract, (5) implied contractual indemnification, (6) breach of implied warranty of merchantability, and (7) violation of California Business and Professions Code section 1700 ("UCL claim"). Compl. ¶¶ 40–101. Grocery Outlet seeks (A) direct and consequential damages, (B) punitive damages, (C) indemnity from Naftali for the penalties associated with the EPA's enforcement action, (D) attorney's fees, and (E) other further relief that the Court deems just and proper. Compl. ¶¶ A–E.

Naftali now brings two motions. First, Naftali moves to dismiss the UCL claim, arguing that Grocery Outlet lacks statutory standing. See generally MTD. Second, Naftali moves to strike Grocery Outlet's claim for punitive damages, but requests that the Court

convert the motion into a motion to dismiss under Rule 12(b)(6).  See generally MTS; MTS Reply (dkt. 36).  Naftali also moved to strike Grocery Outlet's claims for attorney's fees but has since withdrawn that motion.  See MTS Reply at 2–3.

## II. LEGAL STANDARD

Dismissal is proper where the complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Dismissal may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting another source).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Fed. R. Civ. P. 8(a)(2).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Fed. R. Civ. P. 12(b)(6).

When evaluating a motion to dismiss, the Court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of L.A., 828 F.2d 556, 561 (9th Cir. 1987).  A court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  A party may "state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3).

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2).  A court has discretion to deny leave to amend due to "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008) (alteration in original).

5

### III. DISCUSSION

The Court addresses the motions in the following order: (A) Naftali's motion to dismiss the UCL claim, and (B) Naftali's motion to strike.

#### A. Motion to Dismiss UCL Claim

Grocery Outlet's seventh cause of action arises under California Business and Profession Code section 1700 et seq., also known as the Unfair Competition Law ("UCL"). Compl. ¶¶ 95–101. Naftali moves to dismiss this claim, arguing that Grocery Outlet lacks statutory standing to assert a claim under the UCL because (1) Grocery Outlet is "a large or sophisticated corporate plaintiff," and (2) "the contracts-at-issue do not involve either the public in general or individual consumers." MTD at 4.

The UCL broadly prohibits "unfair competition," which is defined as "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200; Friedman v. AARP, Inc., 855 F.3d 1047, 1051 (9th Cir. 2017). "The UCL's purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." Kasky v. Nike, Inc., 27 Cal.4th 939, 949 (2002), as modified (May 22, 2002). Thus, UCL claims involving "alleged victims [that] are neither competitors nor powerless, unwary consumers," generally fail. Linear Tech. Corp. v. Applied Materials, Inc., 152 Cal. App. 4th 115, 135 (2007).

In Linear Technology, the court held that "[w]here a UCL action is based on contracts not involving either the public in general or individual consumers who are parties to the contract, a corporate plaintiff may not rely on the UCL for the relief it seeks." Id. at 135. The court reasoned that, in such situations, the corporate plaintiff could use its resources "to seek damages or other relief" outside of the UCL. Id. Courts applying Linear Technology have "recognized that it essentially withdraws UCL standing from non-competitor corporate plaintiffs seeking to bring a UCL action based on contracts not involving the public or individual consumers." Open Text, Inc. v. Northwell Health, Inc., No. 2:19-CV-09216-SB-AS, 2021 WL 1235254, at *2 (C.D. Cal. Feb. 19, 2021) (collecting cases). Still, Linear Technology's holding does not preclude all non-competitor

corporate plaintiffs from proceeding under the UCL because it "turn[ed] less on the fact that the alleged victims . . . were businesses, and more on the fact that the[] entities were sophisticated and individually capable of seeking relief for their injuries." Circle Click Media LLC v. Regus Mgmt. Grp. LLC, No. 3:12-CV-04000-SC, 2015 WL 6638929, at *4 (N.D. Cal. Oct. 30, 2015) (emphasis added).

Thus, Grocery Outlet lacks standing to bring a UCL claim if (1) it is a "large" or "sophisticated" corporate plaintiff that has "the resources to seek damages or other relief," and (2) its UCL claim is "based on contracts not involving either the public in general or individual consumers who are parties to the contracts," and (2)  See Linear Tech. Corp., 152 Cal. App. 4th at 135; see also In re Webkinz Antitrust Litig., 695 F. Supp. 2d 987, 999 (N.D. Cal. 2010) (explaining that the "UCL grants standing to companies of varying size" as long as they "state a connection to the protection of the general public" or "to individual consumer's interest.").

Grocery Outlet does not dispute that it is a "large" or "sophisticated" corporate plaintiff.  See Pl. Opp. MTD at 4.  Nor does Grocery Outlet disagree that the contracts at issue, the Purchase Orders for the sanitizing wipes, were between itself and Naftali. However, Grocery Outlet contends that it has standing under Linear Technology because Naftali's "alleged conduct has some adverse effect on the public that exists independently of its adverse effect on the corporate plaintiff alone." Pl. Opp. MTD at 5.

Grocery Outlet cites two cases in support of its argument that a corporate plaintiff has standing under the UCL if a defendant's conduct adversely affects the public, even if the contract itself does not involve the public.  First, Grocery Outlet cites Circle Click Media LLC, 2015 WL 6638929.  See Pl. Opp. MTD at 5.  There, the plaintiff brought a putative class action on behalf of the defendant's customers and the court held that the plaintiff had UCL standing. 2015 WL 6638929, at *5–7.  In reaching this holding, the court distinguished the case from Linear Technology and other similar cases.  Id.  The court noted that "the proposed class of plaintiffs [was] not so uniformly sophisticated and capable of seeking relief" against the defendant and that the "action involved form

7

1  contracts as opposed to individually negotiated contracts between sophisticated entities"
2  Id.  The court further noted that the defendant's acts were "not limited to the parties'
3  contractual relationship."  Id.  Although the central aspect of the plaintiff's claim was
4  contractual, the claims also alleged that the class of plaintiffs were harmed as a result of
5  the defendant's alleged unlawful, unfair, or deceptive scheme.  The court did not, as
6  Grocery Outlet suggests, hold that "these negative effects on the public itself were
7  sufficient to confer UCL standing on the corporate plaintiff."  Pl. Opp. MTD at 5
8  (emphasis added).

9  Second, Grocery Outlet cites to Free Range Content, Inc. v. Google Inc., 2016 WL
10 2902332, at *17 (N.D. Cal. May 13, 2016).  Pl. Opp. MTD at 6.  There, the plaintiffs were
11 former Google AdSense publishers who brought a "purported class action to challenge
12 Google for allegedly terminating their accounts without cause and unlawfully withholding
13 revenue."  2016 WL 2902332, at *1.  The court held that the plaintiffs had UCL standing
14 because the case involved form contracts and implicated the interests of the individual
15 consumers "who clicked on AdSense ads" and who "may be harmed if a[n] [AdSense]
16 publisher who caters to their interests is terminated."  Id. at *17.

17 Both cases are distinguishable from the present case.  The courts in those cases
18 allowed the UCL claim by a corporation because, unlike here, the alleged acts were "not
19 limited to the parties' contractual relationship"—rather, the defendant's acts allegedly
20 harmed a class of "not so uniformly sophisticated" individual plaintiffs.  See Circle Click
21 Media LLC, 2015 WL 6638929, at *5.  And the contracts at issue in both cases were form
22 contracts.  See id.; Free Range Content, Inc., 2016 WL 2902332, at *17.  Here, by contrast,
23 Grocery Outlet's UCL claim is based on a private, contractual dispute between two
24 corporate entities—not a form contract—and the pleadings do not suggest that Naftali's
25 allegedly unfair, deceptive, and unlawful acts implicated any individual consumers or the
26 public in general.  Cf. Ewert v. eBay, Inc., No. C-07-02198 RMW, 2010 WL 4269259, at
27 *1, 8–9 (N.D. Cal. Oct. 25, 2010) (holding that a group of sellers could bring a UCL claim
28 in part because it dealt "exclusively with form contracts . . . and involve[d] individual

8

consumers").

Grocery Outlet argues that the interests of the individual consumers are implicated because Naftali's "deficient products were sold to the general public," Grocery Outlet was "forced to issue a comprehensive recall of unsold wipes . . . [that] were in the process of being actively purchased by the public," and "individual consumers may be harmed by Naftali's illegal wipes." Id. at 6–7. These arguments are unpersuasive because Grocery Outlet's pleadings are limited to its contractual relationship with Naftali.

All of Grocery Outlet's claims arise from its purchase of the allegedly defective Goods and Naftali's alleged breach of the parties' agreement and Natali's warranties. See Compl. ¶¶ 1–7, 40–101. Grocery Outlet's "relationship with [Naftali] is defined by their contractual arrangement," and the legality of Naftali's actions depends on the nature of that contractual relationship, which "did not involve the general public or individual consumers." See In re ConocoPhillips Co. Serv. Station Rent Cont. Litig., No. M:09-CV-02040 RMW, 2011 WL 1399783, at *3 (N.D. Cal. Apr. 13, 2011). Unlike Circle Click Media LLC, and Free Range Content, Inc., which involved class plaintiffs who were harmed as a result of the defendant's alleged unlawful, unfair, or deceptive act, this dispute is "centered on the economic relationship between two commercial parties and [is] untethered to the protection of competitors of the public—i.e., the sort of conflict 'that the UCL does not contemplate.'" See Open Text, Inc. v. Northwell Health, Inc., No. 2:19-CV-09216-SB-AS, 2021 WL 1235254, at *2 (C.D. Cal. Feb. 19, 2021).

Further, the only injured party alleged in the complaint is Grocery Outlet, and that alleged harm arises from its private contract with Naftali. See e.g., Dollar Tree Stores, Inc. v. Toyama Partners LLC, 875 F. Supp. 2d 1058, 1083 (N.D. 2012) (concluding that plaintiffs had no UCL standing because the claim was based on a breach of contract); cf. Circle Click Media LLC, 2015 WL 6638929 at *5 ("[T]he allegedly unfair, deceptive, and unlawful acts committed by [the defendant] are not limited to the parties' contractual relationship" and include "publishing deceptive advertisements."). And unlike the class plaintiffs in Circle Click Media LLC and Free Range Congent, Inc., Grocery Outlet is not

9

seeking redress for any of its customers.³  See Compl. at Prayer for Relief.  The only alleged harm is to Grocery Outlet, not to individual consumers or to the public.  See TopDevz, LLC v. LinkedIn Corp., No. 20-CV-08324-SVK, 2021 WL 6113003, at *3–4 (N.D. Cal. Dec. 27, 2021) (concluding that allegations of "tenous relationship between the contracts at issue and the public interest" were "insufficient to establish that th[e] case involve[d] the public in general or individual consumers").

In sum, because Grocery Outlet is a "large" and "sophisticated corporate plaintiff, and its claims are based on a privately negotiated contract without "the requisite public or individual consumer interest as required under California law," Grocery Outlet lacks standing to assert its UCL claim.  See Linear Tech. Corp., 152 Cal. App. 4th at 135; In re Webkinz Antitrust Litig., 695 F. Supp. 2d at 998–99.

Accordingly, the Court GRANTS Naftali's motion to dismiss Grocery Outlet's UCL claim.  Moreover, because this decision turns on the private contractual nature of the parties' relationship and Grocery Outlet's status as a large, sophisticated corporate entity, any amendments would be futile.  Leadsinger, Inc., 512 F.3d at 532.  Even with additional allegations regarding the direct effect on the public interest, Grocery Outlet cannot "turn to the UCL to remedy its business-to-business contractual dispute."  See Open Text, Inc. v. Northwell Health, Inc., 2021 WL 1235254, at *4.  Therefore, the Court DENIES leave to amend.

**B.     Motion to Strike**

Naftali moved to strike Grocery Outlet's claims for: (1) attorney's fees, and (2) punitive damages.  See MTS.  Because Naftali has withdrawn its motion as it pertains to attorney's fees, MTS Reply at 2–3, the motion as to attorney's fees is DENIED AS MOOT.

The Court, therefore, only addresses Naftali's motion to strike punitive damages.

---

³ The Court also notes that, to the extent that Naftali's allegedly unlawful actions harmed individual consumers, such harm would not be remedied by awarding Grocery Outlet's prayer for relief.

### 1.     Converting Rule 12(f) Motion to Rule 12(b)(6) Motion

As a preliminary matter, the Court converts Naftali's motion to strike to a motion to dismiss. Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matters." Fed. R. Civ. P. 12(f). However, "a motion to strike is not a procedural mechanism to strike punitive damages." Zheng v. Maroun, No. 21-CV-07925-SK, 2022 WL 14813840, at *1 (N.D. Cal. Oct. 25, 2022); Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 974–75 (9th Cir. 2010) ("Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law."). Instead, the proper procedural mechanism "for challenging the sufficiency of factual allegations in a complaint is through Rule 12(b)(6)." Parker v. Fid. Sec. Life Ins. Co., No. CIV. F 06-654 AWI DL, 2006 WL 2190956, at *5 (E.D. Cal. Aug. 1, 2006). "Where a motion is in substance a Rule 12(b)(6) motion, but is incorrectly denominated as a Rule 12(f) motion, a court may convert the improperly designated Rule 12(f) motion into a Rule 12(b)(6) motion." Consumer Sols. REO, LLC v. Hillery, 658 F. Supp. 2d 1002, 1021 (N.D. Cal. 2009).

Naftali concedes that its argument to strike Grocery Outlet's request for punitive damages is, in substance, a motion to dismiss under 12(b)(6). MTS Reply at 2. Accordingly, the Court converts Naftali's Rule 12(f) motion into a Rule 12(b)(6) motion and analyzes it accordingly.

### 2.     Punitive Damages

Naftali advances two arguments in support of the dismissal of Grocery Outlet's claim for punitive damages. First, Naftali argues that Grocery Outlet is not entitled to punitive damages for actions that are based on an express contract, implied contract, or the UCL. MTS at 4–5 (citing Brewer v. Premier Golf Properties, LP, 168 Cal. App. 4th 1243, 1251–52 (2008); Quigley v. Pet, Inc., 162 Cal. App. 3d 877, 887 (1984); Gharzarian v. Magellan Health, Inc., 53 Cal. App. 5th 171, 196 (2020)); see also Cal. Civ. Code § 3294(a) (stating that punitive damages are recoverable "[i]n an action for the breach of an obligation <u>not</u> arising from contract") (emphasis added). Second, Naftali argues that

11

Grocery Outlet has failed to sufficiently allege facts regarding malice or fraudulent intent. MTS at 5 n.1 (citing Clark v. State Farm Mut. Aut. Ins. Co., 231 F.E.D. 405, 406 (C.D. Cal. 2005)).

Grocery Outlet cites no contrary authority, and instead "agrees to withdraw its demand for punitive damages."[4] MTS Reply at 2. Accordingly, the Court GRANTS Naftali's motion to dismiss Grocery Outlet's claim for punitive damages. See Ramirez v. City of Buena Park, 560 F.3d 1012, 1026 (9th Cir. 2009) ("A party abandons an issue when it has a full and fair opportunity to ventilate its views with respect to an issue and instead chooses a position that removes the issue from the case.") (quotations omitted).

## IV. CONCLUSION

For the foregoing reasons, the Court (1) GRANTS Naftali's motion to dismiss Grocery Outlet's UCL claim and DENIES leave to amend, (2) GRANTS Naftali's motion to dismiss Grocery Outlet's punitive damages claim, and (3) DENIES Naftali's motion to strike the attorney's fees claim as MOOT.

**IT IS SO ORDERED.**

Dated: July 24, 2024

_____
CHARLES R. BREYER
United States District Judge

---

[4] Naftali has not agreed to withdraw the motion, MTS Reply at 3, nor has Grocery Outlet sought leave from the Court to amend its complaint.