IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GROCERY OUTLET, INC.,<br><br>      Plaintiffs,<br><br>   v.<br><br>NAFTALI, INC.,<br><br>      Defendants. | Case No. 23-cv-05254-CRB<br><br>**ORDER DENYING MOTION TO STRIKE, GRANTING MOTION TO DISMISS** |

Grocery Outlet, Inc. and one of its suppliers, Naftali, Inc., have sued each other over Naftali's sale of pesticidal sanitary wipes to Grocery Outlet. Grocery Outlet now brings two alternative motions: (1) a motion to strike Naftali's second amended answer in its entirety and (2) a motion to dismiss Naftali's three newly alleged counterclaims (for breach of contract, fraudulent inducement, and negligent misrepresentation). Finding this matter suitable for resolution without oral argument pursuant to Local Civil Rule 7-1(b), the Court **DENIES** the motion to strike and **GRANTS** the motion to dismiss.

I.   BACKGROUND

   A.   The Parties

Naftali is a Florida corporation that markets and manufactures goods, such as sanitary wipes and other travel and self-care products. Second Amended Answer (SAA) (dkt. 56) ¶¶ 7, 8, 11, 13. Grocery Outlet is a supermarket retailer based in California that sells discounted, overstocked, and closeout name brand and private label products. Id. ¶ 2.

   B.   The Dispute

At the beginning of the COVID-19 pandemic, Naftali sold Grocery Outlet two types of sanitary wipes: one that it had acquired from a third party, and another it manufactured

itself. See id. ¶¶ 6, 7, 8, 11. The labeling on both types of wipes did not comply with state and federal law. Id. ¶ 14. Neither Naftali nor Grocery Outlet was aware of any labeling deficiencies when they entered into the agreement. Id. ¶ 12. Grocery Outlet subsequently resold the nonconforming wipes in its stores. See id. ¶¶ 6, 14, 22.

The federal Environmental Protection Agency (EPA) notified Grocery Outlet in March 2021 that both types of wipes used noncompliant labels in violation of federal and state law. Id. ¶ 14; Compl. (dkt. 1) ¶ 19. In response, Grocery Outlet recalled over 160,000 wipes. SAA ¶ 14.

The EPA never contacted Naftali about the labeling issues. Id. But in May 2021, a year after purchasing and accepting the wipes, Grocery Outlet informed Naftali that it was rejecting the wipes because they failed to conform to state and federal law. Id. Naftali offered to cover the cost of ground shipping and refund Grocery Outlet for all unused and undamaged packages of wipes that could be returned to Naftali. Id. ¶ 16. Grocery Outlet returned over 40,000 units, of which over 5,000 were opened or damaged. Id. ¶ 17. Naftali offered a payment to Grocery Outlet of approximately $75,000 for the undamaged returned products, but Grocery Outlet did not accept the offer. Id. ¶ 19. Instead, Grocery Outlet requested a refund for all unsold wipes—not just the ones that it had returned to Naftali. Id.

### C.     Procedural History

On October 13, 2023, Grocery Outlet filed its initial complaint with seven claims for relief. See Compl. Naftali responded with eight affirmative defenses and three counterclaims for "declaratory relief for rescission," "declaratory relief regarding compromise agreement," and "breach of contract." See Amended Answer (dkt. 48). Grocery Outlet moved to dismiss Naftali's two counterclaims for declaratory relief. See Mot. to Dismiss (dkt. 52) at 2. The Court granted Grocery Outlet's motion. See MTD Order (dkt. 55) at 8. Naftali then filed a second amended answer, restating its initial eight affirmative defenses and adding nine new affirmative defenses. See SAA. Naftali also added three counterclaims for "breach of contract," "fraudulent inducement," and

2

"negligent misrepresentation."[1]  See id.  Grocery Outlet then moved to strike Naftali's second amended answer in its entirety or, alternatively, to dismiss Naftali's three new counterclaims.  See Mot. to Strike or Dismiss (dkt. 57).

## II.     MOTION TO STRIKE

### A.     LEGAL STANDARD

Rule 12(f) of the Federal Rules of Civil Procedure permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  If a party has already amended its pleading as a matter of course, the "party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  A court has discretion to deny leave to amend, or to strike improperly amended pleadings, due to "undue delay" or "undue prejudice to the opposing party by virtue of allowance of the amendment."  Leadsinger, Inc. v. BMG Music Publ'g, 512 F.3d 522, 532 (9th Cir. 2008) (cleaned up).  But "Rule 12(f) motions are 'disfavored,'" Equine Legal Sols., Inc. v. Buntrock, No. 07-04976-CRB, 2008 WL 111237, at *2 (N.D. Cal. Jan. 9, 2008) (citation omitted), and the Ninth Circuit has instructed that amendments should be allowed with "extreme liberality."  Desertrain v. City of Los Angeles, 754 F.3d 1147, 1154 (9th Cir. 2014).

### B.     DISCUSSION

Grocery Outlet moves to strike Naftali's second amended answer, which includes nine new affirmative defenses and three new counterclaims, in its entirety.  See MTSD at 6.  Grocery Outlet claims that Naftali failed to comply with Federal Rules of Civil Procedure 15(a)(2) and 8(c).  Id.  Rule 15(a)(2) states that a party may only amend its pleading as a matter of course, with the opposing party's written consent, or with the court's leave.  Rule 8(c) establishes that, in response to a pleading, "a party must affirmatively state any avoidance or affirmative defense."

---

[1] Along with its three new counterclaims, Naftali also re-alleges the same breach of contract counterclaim that it originally raised in its first answer.  SAA ¶ 114.  In this counterclaim, Naftali alleges that Grocery Outlet breached a compromise agreement that the parties had reached.  Id.  Grocery Outlet has never moved to dismiss this counterclaim.

1    Grocery Outlet makes two primary arguments to support its position: First, Grocery
2    Outlet contends that Naftali exceeded the scope of its leave to amend, violating Rule
3    15(a)(2). MTSD at 6. Second, Grocery Outlet claims that it would be unfairly prejudiced
4    were Naftali's amendments to be allowed.[2] Id. at 8. Neither argument is persuasive.
5    Accordingly, the Court **DENIES** Grocery Outlet's motion to strike.

### 1.   Scope of Leave to Amend

Grocery Outlet first argues that the Court's order granting Grocery Outlet's first motion to dismiss confined Naftali's leave to amend to the two dismissed counterclaims. MTSD at 6. The Court's order stated that "the Court GRANTS Grocery Outlet's motion to dismiss Naftali's first and second amended counterclaims with leave to amend within 30 days." MTD Order at 8. Grocery Outlet claims that Naftali needed to file a Rule 15(a)(2) motion if it wanted to amend any affirmative defenses or counterclaims aside from its two dismissed counterclaims for declaratory relief. MTSD at 6. Naftali filed no such motion, so Grocery Outlet contends that these new defenses and counterclaims should be stricken. Id. In response, Naftali argues that this Court did not impose any restrictions on the scope of amendment and that, where leave to amend is granted without limitations, a party is permitted to add new causes of action to its pleadings. Opp. (dkt. 59) at 4.

Grocery Outlet relies on a single case in support of its scope-of-amendment argument: DeLeon v. Wells Fargo Bank, N.A., No. 10-CV-01390-LHK, 2010 WL 4285006, at *3 (N.D. Cal. Oct. 22, 2010). In DeLeon, the court held that "where leave to amend is given to cure deficiencies in certain specified claims, courts have agreed that new claims alleged for the first time in the amended pleading should be dismissed or stricken."[3]

---

[2] Grocery Outlet also argues that Naftali's "undue delay" (in bringing new counterclaims in December 2024 despite the action being filed in October 2023) precludes amendment. MTSD at 9. But Naftali filed its second amended answer within 30 days, as the Court contemplated in its prior order. MTD Order at 8. And Grocery Outlet does not identify evidence of a dilatory motive or prejudice caused by the delay, meaning any broader claim of "undue delay" is not enough to strike the amended pleadings. See Castillo v. Nationstar Mortg. LLC, No. 15-cv-1743-BLF, 2016 WL 8135345, at *2 (N.D. Cal. Aug. 11, 2016) ("undue delay standing alone is insufficient to prevent the Court from granting leave to amend pleadings").

[3] DeLeon itself relies on two cases, neither of which is analogous. In one, the court had

Id. In that case, however, the court had explicitly granted leave to amend "in part." Id. at *1. Further, the preceding order had "expressly denied leave to amend with respect to six of Plaintiffs' claims." Id. at *3. And the DeLeon court even recognized that "California district courts have occasionally considered new claims submitted in an amended complaint where the prior order of dismissal granted leave to amend without limitation." Id. (citing Topadzhikyan v. Glendale Police Dep't, No. 10 CV-10-387-CAS, 2010 WL 2740163, at *3 n.1 (C.D. Cal. July 8, 2010)).

Here, by contrast, the Court did not expressly limit the scope of Naftali's leave to amend. MTD Order at 8. DeLeon is therefore not on point. And Grocery Outlet's argument in favor of striking Naftali's second amended answer runs afoul of the Ninth Circuit's policy of allowing amendment with "extreme liberality." Desertrain, 754 F.3d at 1154; see also Urista v. Bank of Am., N.A., No. C11-03097-HRL, 2012 WL 10596, at *6 (N.D. Cal. Jan. 3, 2012) (finding, in a case where amendment had been granted without limitation, that "while plaintiff would have been prudent to request leave to amend to add new claims and parties, the court will not elevate form over substance to strike the new claims"). Grocery Outlet's scope-of-amendment argument does not provide an appropriate justification to strike Naftali's second amended answer.

### 2. Undue Prejudice

Grocery Outlet further argues that Naftali's amended affirmative defenses and counterclaims should be stricken because Grocery Outlet "would incur unfair prejudice if Naftali were allowed to amend the SAA as drastically as it is trying to do." MTSD at 8. While Grocery Outlet admits that the parties have yet to engage in "extensive discovery," Grocery Outlet states that it has spent two months conducting fact investigations and

---

allowed the plaintiffs to amend their complaint for a third time subject to specific instructions. Kennedy v. Full Tilt Poker, No. CV 09-07964-MMM AGRX, 2010 WL 3984749, *1 (C.D. Cal. Oct. 12, 2010). The court then concluded that the plaintiffs' amendment "exceeded the authorization to amend" that the court had granted in its previous order. Id. (cleaned up). In the other, the court had granted the plaintiff leave to amend its "Second Cause of Action." Andrew W. v. Menlo Park City Sch. Dist., No. C-10-0292-MMC, 2010 WL 3001216, *2 (N.D. Cal. July 29, 2010). The court held that the plaintiff's amended pleading exceeded the scope by adding four new claims. Id.

preparing for discovery. Id. Grocery Outlet claims it would "have to go back to the drawing board" if Naftali's amended defenses and claims proceed. Id. at 8–9.

Naftali responds to Grocery Outlet's argument by highlighting that the parties have not exchanged any discovery materials aside from initial disclosures. Opp. at 7. Naftali also points out that the factual allegations in its second amended answer closely resemble the factual allegations in its first amended answer. Id. at 8. Consequently, Naftali claims that Grocery Outlet cannot reasonably claim prejudice merely because it completed two months of fact investigations that it would have needed to complete regardless. Id.

The Ninth Circuit has held that, where amendment would put the opposing party "through the time and expense of continued litigation on a new theory, with the possibility of additional discovery," undue prejudice is more likely. Jackson v. Bank of Hawaii, 902 F.2d 1385, 1388 (9th Cir. 1990). Additionally, a party is more likely to suffer undue prejudice where amended claims "advance different legal theories and require proof of different facts." Id. at 1387. In contrast, "the need to undertake additional discovery cannot be classified as prejudice so long as ample time remains … to complete that discovery before the discovery cutoff date." AmerisourceBergen Corp. v. Dialysist W., Inc., 465 F.3d 946, 960 (9th Cir. 2006) (cleaned up). Even if new claims would "greatly change the nature of the litigation," that is not reason enough to reject an amendment. See Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990).

Because Grocery Outlet does not allege that allowing Naftali to move forward with its second amended answer would result in significant additional discovery or "require proof of different facts," Grocery Outlet cannot show that it would be sufficiently prejudiced to warrant striking Naftali's new affirmative defenses and counterclaims. See AmerisourceBergen, 465 F.3d at 953; see also AliveCor, Inc. v. Apple Inc., No. 21-cv-3958-JSW, 2022 WL 10719062, at *4 (N.D. Cal. Oct. 18, 2022) (allowing amendment even though the supplemental allegations included a new legal theory that would require proof of different facts because the allegations were "sufficiently connected to the existing [] claims"). Here, both parties admit that discovery is in its very beginning stages. MTSD

6

at 8; Opp. at 7.  Additionally, Naftali's factual allegations have not changed significantly between its first and second amended answers.  See Amended Answer; SAA.  Grocery Outlet thus cannot show that it would be unduly prejudiced by Naftali's amended counterclaims.

Because the Court's prior order does not limit the scope of amendment and Grocery Outlet has suffered no unfair prejudice, the Court **DENIES** Grocery Outlet's motion to strike Naftali's second amended answer.

### III.   MOTION TO DISMISS

#### A.   LEGAL STANDARD

Pursuant to Rule 12(b)(6), the Court may dismiss a complaint for failure to state a claim upon which relief may be granted.  Dismissal may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged."  Godecke v. Kinetic Concepts, Inc., 937 F.3d 1201, 1208 (9th Cir. 2019).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007).

When evaluating a motion to dismiss, the Court "must presume all factual allegations … to be true and draw all reasonable inferences in favor of the nonmoving party."  Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  That said, a court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  "Courts must consider the [pleading] in its entirety, as well as … documents incorporated … by reference."  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

Claims for fraud must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires a party "alleging fraud or mistake [to] state with particularity the circumstances constituting fraud or mistake."  Rule 9(b) "requires … an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  Swartz v. KPMG LLP, 476 F.3d 756,

7

764 (9th Cir. 2007) (cleaned up); see also In re Google Assistant Priv. Litig., 546 F. Supp. 3d 945, 955 (N.D. Cal. 2021) ("averments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged." (citation omitted)).

### B.     DISCUSSION

Grocery Outlet moves to dismiss Naftali's three new counterclaims, which are for (1) breach of contract and the implied covenant of good faith and fair dealing, (2) fraudulent inducement, and (3) negligent misrepresentation. Grocery Outlet argues that Naftali fails to allege the necessary elements of its new counterclaims. See MTSD at 9–13.

#### 1.     Breach of Contract

Grocery Outlet argues that Naftali fails to properly state a claim for either breach of contract or breach of the implied covenant of good faith and fair dealing. Id. at 9. Under California law, "the standard elements of a claim for breach of contract are: '(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom.'" Wall St. Network, Ltd. v. N.Y. Times Co., 164 Cal. App. 4th 1171, 1178 (2008) (citation omitted). Grocery Outlet contends that Naftali failed to establish three required elements of both claims. MTSD at 10–12. First, Grocery Outlet contends that Naftali does not sufficiently allege that Naftali performed under the contract. Id. Second, Grocery Outlet argues that Naftali fails to allege that Grocery Outlet breached the contract. Id. Third, Grocery Outlet claims that Naftali fails to allege that it was harmed by any breach.[4] Id.

The Court holds that Naftali does not sufficiently allege harm—the final element of a breach of contract. The Court consequently does not reach Grocery Outlet's arguments regarding performance or breach.

---

[4] The elements of an implied-covenant claim largely mirror the elements of a breach-of-contract claim, so Grocery Outlet uses the same arguments to address the corresponding elements of both claims. See MTSD; see also Rosenfeld v. JPMorgan Chase Bank N.A., 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010) (elements of a claim for breach of the implied covenant of good faith and fair dealing). Naftali, for its part, does not give any reason that its implied-covenant claim should survive even if its breach-of-contract claim fails.

8

1  To adequately state a claim for breach of contract, a plaintiff must allege that
2  "defendants' breach of its obligation proximately caused harm."[5] San Mateo Union High
3  Sch. Dist. v. County of San Mateo, 213 Cal. App. 4th 418, 440 (2013). Grocery Outlet
4  argues that Naftali fails to identify any harm it suffered from Grocery Outlet's alleged
5  breaches. MTSD at 11. So, Grocery Outlet argues, Naftali does not adequately allege its
6  claim for breach of contract or breach of the implied covenant—even taking as true all of
7  Naftali's factual allegations. See id.

8  In response, Naftali seems to suggest that it does not need to allege that it was
9  harmed by Grocery Outlet's breach because Naftali "does not seek contract damages for
10 Grocery Outlet's breach." Opp. at 11. Instead, Naftali asserts that it "seeks to rescind the
11 parties' agreement due to mistake." Id. Naftali explains that the purpose of rescission is to
12 provide equitable relief by restoring both parties, as close as possible, to their former
13 positions. Id. at 12. And because "Grocery Outlet is not capable of restoring Naftali to its
14 former position by returning all the goods," Naftali seeks a portion of Grocery Outlet's
15 profits earned by selling the wipes. Id. Naftali argues that it is entitled to such
16 "rescissionary damages" under Civil Code section 1692. Id.

17 While Naftali is correct that rescission may be available to a party whose consent to
18 a contract was given by mistake, see Cal. Civ. Code § 1689(b)(1), this does not matter. To
19 properly rescind a contract under the doctrine of mistake, a party still must allege some
20 form of injury or harm that would result in substantial unfairness were the contract to be
21 enforced. See Donovan v. RRL Corp., 26 Cal. 4th 261, 282 (2001); see also Restatement
22 (Second) of Contracts § 153. This is because a party seeking rescission must establish that
23 "the effect of the mistake is such that enforcement of the contract would be
24 unconscionable." Donovan, 26 Cal. 4th at 282; see also Restatement (Second) of
25 Contracts § 153. Specifically, the rescinding party must show that enforcement of the

---

[5] Similarly, the fifth element of a claim for breach of the implied covenant of good faith and fair dealing explicitly requires that a plaintiff allege that he was "harmed by the defendant's conduct." Rosenfeld, 732 F. Supp. 2d at 968.

9

contract would lead to "overly harsh or one-sided results." Donovan, 26 Cal. 4th at 292.

Naftali does not allege that enforcement of its contract with Grocery Outlet would be unconscionable, nor does Naftali allege facts from which such a conclusion could be reasonably inferred. The closest Naftali gets is with its assertion that Grocery Outlet has demanded indemnification from Naftali "for its own knowingly illicit sale of the wipes." Opp. at 11. But any harm stemming from this demand is purely hypothetical, as it depends on Grocery Outlet succeeding on its own breach-of-contract claims—which, incidentally, would be a result incompatible with Naftali's theory of breach of contract. See Compl. ¶ 40. And if Grocery Outlet were to lose on its breach-of-contract claims, then Naftali would have suffered no harm. Moreover, Naftali received over $1.8 million for the nonconforming wipes, further illustrating that Naftali has not been harmed under the contract. Reply (dkt. 61) at 8. Thus, Naftali's pleadings do not support the contention that recission is necessary to avoid an unconscionable contract.

Naftali also cites no case supporting the proposition that rescission can be sought in the absence of harm. Naftali cites several cases in support of the general principle that courts can award monetary relief while also granting rescission if necessary to achieve "complete equity between the parties." See Runyan v. Pac. Air Indus., Inc., 2 Cal. 3d 304, 316 (1970) (affirming a trial court's decision to concurrently rescind the contract at issue and award the plaintiff consequential damages for lost income); Bank of Am. Nat'l Tr. & Savings Ass'n v. Greenbach, 98 Cal. App. 2d 220, 238 (1950) ("[C]oncurrent with the award of rescission, the trial court may award money damages or order such other relief as justice may require."). But Naftali's cases do not implicate the additional conditions, such as an unconscionable outcome, that must be satisfied when a party pursues a claim for rescission. To the contrary, the harm suffered in the rescission cases cited by Naftali (such as the loss of income over a seven-month period) are far more concrete than Naftali's hypothetical concern regarding Grocery Outlet's demand for indemnification. See Runyan, 2 Cal. 3d at 310.

Naftali's argument that it can pursue rescission as an alternative remedy to

1    damages, and thereby avoid the need to allege harm, is further undermined by the fact that
2    unilateral mistake does not serve as a basis for rescission where the party seeking
3    rescission bears the risk of the mistake at issue. See Grenall v. United of Omaha Life Ins.
4    Co., 165 Cal. App. 4th 188, 193 (2008); Restatement (Second) of Contracts § 153. A party
5    bears the risk of mistake where the contract specifically allocates the risk to that party. See
6    Grenall, 165 Cal. App. 4th at 193 (explaining that "[a] contracting party bears the risk of a
7    mistake when the agreement so provides" and a "mistake of this nature does not support a
8    claim for rescission"); see also United States v. Hathaway, 242 F.2d 897, 899 (9th Cir.
9    1957) ("mutual mistake renders a sales contract voidable only if the parties have not
10   agreed among themselves that the risk of such mistake shall be assumed by" one of the
11   parties). The contract between Naftali and Grocery Outlet, which is incorporated by
12   reference into Naftali's answer, expressly allocates the mistake at issue onto Naftali. See
13   Compl. ¶ 17 ("Seller expressly warrants that all Goods comply with all state, federal, and
14   local laws and regulations applicable to the Goods … .").
15        In short, Naftali is not entitled to seek rescission under Civil Code section 1689.
16   Even accepting Naftali's factual allegations as true, Naftali does not allege any harm, so it
17   cannot show that enforcement of its contract with Grocery Outlet would be
18   unconscionable. And in any case, Naftali bore the risk of the mistake at issue, precluding
19   it from properly stating a claim for rescission. As a result, the Court **GRANTS** Grocery
20   Outlet's motion to dismiss Naftali's first counterclaim for breach of contract and breach of
21   the implied covenant of good faith and fair dealing.

### 2.    Fraudulent Inducement and Negligent Misrepresentation

23   Grocery Outlet next argues that Naftali fails to sufficiently state a claim for either
24   fraudulent inducement or negligent misrepresentation. MTSD at 9. To state a claim of
25   fraudulent inducement, a plaintiff must factually allege "(1) misrepresentation (false
26   representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3)
27   intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting
28   damage." All. Mortg. Co. v. Rothwell, 10 Cal. 4th 1226, 1239 (1995). And to state a

claim for negligent misrepresentation, the plaintiff must allege "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC, 158 Cal. App. 4th 226, 243 (2007).

Grocery Outlet attacks several elements of Naftali's second and third counterclaims. MTSD at 12–13. First, Grocery Outlet argues that Naftali does not state its claims with sufficient specificity under Rule 9(b). Id. Second, Grocery Outlet claims that Naftali does not plausibly allege that it justifiably relied on Grocery Outlet's alleged misrepresentations. Id. Third, Grocery Outlet argues that Naftali fails to allege resulting damage or harm. Id. at 10.[6]

The Court holds that, once again, Naftali fails to sufficiently allege resulting damage or harm. The Court therefore does not reach Grocery Outlet's arguments regarding Rule 9(b) specificity or justifiable reliance.

To properly state a claim for either fraudulent inducement or negligent misrepresentation, a plaintiff must allege that it was harmed by the defendant's misrepresentation. See Rufini v. CitiMortgage, Inc., 227 Cal. App. 4th 299, 308 (2014); see also Creative Ventures, LLC v. Jim Ward & Assocs., 195 Cal. App. 4th 1430, 1444 (2011) ("deception without loss is not actionable"). Grocery Outlet argues that Naftali's counterclaims for fraudulent inducement and negligent misrepresentation should be dismissed because Naftali does not allege that any of Grocery Outlet's misrepresentations resulted in Naftali being harmed. MTSD at 10; Reply at 8. Naftali does not specifically address the issue of harm or damages when defending these counterclaims; instead, it appears to rely on the same recission argument as before. See Opp. at 11–13. In other words, Naftali contends that it does not need to allege harm because it is seeking rescission

---

[6] In its motion to dismiss, Grocery Outlet contends that Naftali was not harmed. MTSD at 10. The Court understands this argument to extend to all three of Naftali's counterclaims because all three require Naftali to allege harm or damages.

as an alternative remedy to damages for all three of its counterclaims.  See id.

Though a contract may be rescinded if a party's consent to the contract was obtained through fraud, see Cal. Civ. Code § 1689(b)(1), Naftali cannot escape the need to allege harm by pursuing rescission.  "In every case of fraud, either where damages or rescission is sought, it must be alleged and proved that the complainant has suffered material injury."  Munson v. Fishburn, 183 Cal. 206, 219–20 (1920) (cleaned up); see also Spreckles v. Gorrill, 152 Cal. 383, 388 (1907) ("That fraud which has produced, and will produce, no injury will not justify a rescission, nor support an action either for rescission or damages, is an established principle of law and equity."); Schramm v. JPMorgan Chase Bank, N.A., No. LACV0909442JAKFFMX, 2012 WL 12882883, *4 (C.D. Cal. Dec. 21, 2012) ("A party seeking to rescind a contract must show that he has suffered material injury or prejudice.") (citation omitted).

A claim for negligent misrepresentation, meanwhile, does not even provide a basis for rescission under Civil Code section 1689—with or without a showing of harm.  See Cal. Civ. Code § 1689(b)(1).  And a traditional claim for negligent misrepresentation requires that a plaintiff allege harm.  See Majd v. Bank of America, N.A., 243 Cal. App. 4th 1293, 1308 (2015) (finding that the plaintiff failed to properly state a claim for negligent misrepresentation because the plaintiff did "not allege any facts indicating he suffered damages").

Here, Naftali does not allege any specific or tangible injury stemming from Grocery Outlet's misrepresentations.  While Naftali claims that Grocery Outlet "seeks to impose a grave injustice" by demanding indemnification from Naftali, Naftali fails to allege that Grocery Outlet's misrepresentations proximately caused the indemnification demand. SAA ¶¶ 76, 111.  Naftali does not cite any cases supporting the proposition that an indemnification demand satisfies the "material injury" requirement for rescission based on fraud.  The Court has also been unable to find any cases supporting such a conclusion.  To be sure, a defrauded party can show non-pecuniary damages if they seek recission as a substitute for traditional damages.  See Dunn v. Stringer, 41 Cal. App. 2d 638, 644 (1940).

But that is not a basis to hold that indemnification demands constitute appropriate damages, whether pecuniary or not. In fact, where plaintiffs have successfully stated claims for fraudulent inducement or negligent misrepresentation based on non-pecuniary harm, the injuries have typically already occurred. See Rufini, 227 Cal. App. 4th at 309 (finding that a plaintiff sufficiently alleged harm where, in reliance on a lender's promise, the plaintiff did not seek other financing and spent hundreds of hours negotiating with the lender); Engalla v. Permanente Med. Grp., Inc., 15 Cal. 4th 951, 981 (1997) (plaintiffs had sufficiently alleged harm where they had "suffered delay in the resolution of [their] malpractice dispute"). Naftali's asserted harm from Grocery Outlet's indemnification demand, by contrast, is purely hypothetical at this juncture.

Because Naftali fails to allege that it has suffered any harm—pecuniary or otherwise—that was proximately caused by Grocery Outlet's alleged misrepresentations, the Court **GRANTS** Grocery Outlet's motion to dismiss Naftali's second and third counterclaims for fraudulent inducement and negligent misrepresentation.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Grocery Outlet's motion to strike Naftali's second amended answer, and **GRANTS** Grocery Outlet's motion to dismiss Naftali's three new amended counterclaims without leave to amend.

**IT IS SO ORDERED.**

Dated: February 7, 2025

CHARLES R. BREYER
United States District Judge

14